Page 1 Drag one square which is companied of A and C computed by division of its surface by alpha times plus mu of f u squared spacing minus b.     No I don't. Capabilities. Thank you. Good morning.  I represent TLC, Technology Licensing Corporation, the plaintiff patentee in this case. Your honors, at trial, there were two patents in issue. The eight, what we call the 869, which was the first patent issue, and a follow-on patent, the 250 patents. Both these patents are directed to video sync separators, which for receivers, help that receiver faithfully reproduce images captured by a camera. In connection with the 250, that's the second patent. In finding the anticipation of the asserted claim to that patent, we believe the court erred, the court below erred in properly shifting to TLC, the patentee, the burden of approving written description support, if you will, in the prior application. It's undisputed that the prior part upon which the court below based its anticipation finding, namely what are called the Atlantic data sheets, it's undisputed that those data sheets disclosed everything in the claims that are before this court, the asserted claims. Those data sheets were called to the attention of the patent office during the prosecution of the 250 patent by the inventor, by Mr. Cooper. The examiner had them. He initialed on the information disclosure sheet, and indeed, he reviewed them. And he allowed the claims over those prior art, prior art is going to do much. I didn't find anything in the record that specifically addressed or showed that the examiner specifically addressed the question of the timing between the Atlantic data sheets and the date of the 250 application, if I'm correct. There's nothing in the record that says he actually focused on that question, is there? Fair enough, Your Honor. As far as a yes or no, is there anything in the record that I missed? If there is, please tell me. I think so. OK. But maybe more indirect than the direct reference the court was looking for. The indirect reference is the fact that Mr. Cooper called these data sheets. I want to give you a direct reference. I agree, no direct reference, Your Honor. I can proceed. OK. But the issue is, is there anything to the presumption or the due deference that the court below should have given, in our view, to the examiner's review of those references and his performing his job? And we think that the court below should have given due deference to that. We know that the court recently decided the Haro-Aces case, in which a similar issue came up. But that case was certainly different on the facts, and we believe supports our position in this case. But I've gotten confused. You spend a lot of time and space in your briefs debating who has the burden of proof and the weight of the burden. But disproportionately, as compared to the merits, whatever the burden is, however the burden of going forward shifts back and forward with the Haro-Aces case might be made. Ultimately, the question needs to be decided. Does the initial application, filing, and those drawings adequately describe the exception matter so that the intervening reference is agitated? We agree on that. And that's what it's all about, isn't it? Yes, it is. The one who goes first, I think, it's not really relevant. But in terms of the merits, the answer ought to be the same no matter who goes first and who's got the burden. Either it does or it doesn't provide a basis for predating that reference. We agree totally, Your Honor, and we have laid forth in great detail why one skilled in the art would understand from looking at the drawing, the initial drawings, figure three of the first filed application in February 1992, would understand that the resistor R21 and its R26, another leg, provide the R other circuit, provide support for the R other circuit. We set that forth in great detail. In the first filed application, you have a first part of this complex circuitry set forth. In figure two, there is a capacitor used to couple the input signal, the video signal, and couple it just passes through the capacitor to another part of the circuit. On the other side of the capacitor, there is a level shifting. In other words, the strength of the signal changes as a result of a feedback loop. The very next figure shows a different configuration for doing the same thing. Instead of a capacitor, there are two resistors, R21 and R26. The video signal coming in from exactly the same place, a video amplifier, instead of passing through a capacitor, passes through a resistor, R21. It's coupled through that resistor. And then it goes into this feedback loop. And the level of the resistor is changed. The level of the voltage of the incoming signal is changed. One skill to the art looking at this, their language when you're dealing with video circuitry is circuit diagrams. The court below seemed to focus more on the text of the specification and said, well, I don't see a lot of words. In essence, I don't see a lot of words describing this or other circuit. Indeed, the words, if you will, are the language of one skilled in the art, are circuit diagrams with these designers. The only evidence in this record, and it was presented by TLC of what the level of skill was, was an electrical engineer with several years of experience designing circuitry, particularly video circuitry. Those people, as your honor might imagine, deal in circuit diagrams. It is no stretch whatsoever that they would indeed look at figure two. There's a capacitor. The very next figure, figure three, same type of circuit. Instead of that capacitor, there's R21 and R26 performing that function. So indeed, getting to the merits, your honor, as you suggest. We suggest if the court had viewed this from the standpoint of one skilled in the art, as opposed to what the court said, that is the court placed on TLC the burden of proving that anyone, whatever that meant to the judge, and we don't know, the magistrate judge below, but the court placed on us the burden of proving that anyone looking at figure three would understand with confidence that R21 and R26 were the other circuit being claimed. We suggest that if the court had even referred to the prosecution history, had given deference, due deference, to the examiner's job, and the examiner's job, as the court knows from Power Oasis, is to review these matters. Our client, Carl Cooper, called when the application was filed, the 250 application. He cited 17 references in the 250 case. 12 of those references were from the prior case, the 869 patent. The same examiner was involved. Five of the references were new. Two of those five references were the Atlantic data sheets, and he told the examiner that those were published in 1993, and everyone agrees that those data sheets, if they are prior art, anticipate the claims that are before the court. The presumption is, as the court knows, that deference should be given to the examiners that they did their job. That wasn't even referred to by the court. There's no evidence whatsoever or indication that the court gave any deference to that examiner's determination whatsoever. So, let me ask you one more question. You filed a notice for us to take judicial notice of subsequent proceedings before the trial. Yes, Your Honor, we did. And, but, and there's been an opposition to that motion, but, I want you to, and correct me if I'm wrong, but it seems that you're just saying take judicial notice that this happened, but you don't ask, you don't make any argument based on that. You just kind of want us to have it before us? I think, yes, Your Honor, but there is an argument there, and I think we set forth that in the motion. The argument is, here's the Patent Office looking at this again, and confirming the original determination that these claims are indeed entitled to priority. They've allowed these claims. When we fronted this issue, we gave the examiner, and we fronted it when we submitted this, the lower court's opinion. We gave the examiner all of the arguments. Mr. Guzzo, if I could ask you your name. Very well, Your Honor. Mr. Guzzo, you are not proposing, are you, that a decision by an Article III court can be undone by a later decision of the Patent and Trademark Office, are you? Is that true, is that your argument? I'm, let me see if I can figure through this one. What I'm saying is we have a decision by the trial judge, which is the law of the case, and so we, the Article III appellate court, do something with it. Yes. In the meantime, your client runs over to the PTO after the trial court's decision has been handed and asks the PTO to review the same issue. No, that's not what happened, Judge. And that's not what we're asking you to do. That's what your submission to us suggests, and I'm just simply asking, what is it that you're trying to tell us, that the PTO's subsequent review of the same issue has some bearing on whether the trial court was or was not correct? Is that what you're telling us? It has a bearing, and it has, from this standpoint. How can it possibly have a bearing once the decision has been made by the trial court? First of all, this reissue application was filed in 2004, long before the court's decision. But we did provide, as we were going along, we provided all relevant documents, including the court's decision below to the PTO, as part of the reexamination proceeding. We're not saying that this court should overturn the lower court's decision just because the Patent Office has concluded and confirmed now that there's written description support. We're not saying that. Then why is it before us? What we're saying is we believe that this is further evidence that the court below should have given due deference to the original determination by the original examiner in allowing the case to issue. Is that ex parte evidence that's developed after a court has made a decision that is relevant to the appeal? If you want to call it ex parte evidence, ex parte's the middle, but I would say not ex parte evidence. The evidence, if you will, what was submitted to the Patent Office were all the arguments at trial. So what? The Patent Office is not an Article III appellate court. It is not, Your Honor. It is not, but it. What's the relevance to an appeal before this court? The relevance is the court below found that TLC failed to establish that anyone could determine with confidence that there was written description support. Put aside for the moment the inartful language that we're all going to have to try to understand what it meant. So putting that issue aside, you know what the judgment of the trial court was. Yes. That's what we're reviewing. Yes, Your Honor, I understand. I'm not hearing what the PTO subsequently said, are we? No, You're not. Fine, that's all I want to know. Mr. Prezant, in response to Judge Plattinger's question, you do seem to be suggesting that we should consider what happened before the PTO as a reason to look with disfavor or to question, not to say that that's a majority, but to question the correctness of the district court decision. I mean, that's what I heard you say. You're saying that it casts into doubt the way the district court judge looked at it through the lens of one that's still in the art. In my mind, I wish I could have said it that artfully. Yes, it is artful. Well, no, that's kind of deluded, but the only reason I'm saying is it does appear to me that you are, in response to Judge Plattinger's question, you are sort of saying we should look at it as a reason for altering or vacating or reversing the decision of the district court. I agree. We wouldn't have submitted it to the court with the request. With the burden of the request, I think perhaps the argument that we need to understand, and I appreciate it, it's more complex to see cases where your faculties go the other way on re-examination and where the district judge has upheld the claims and then on re-examination, the PTO has denied them, and we may have considered the expertise of the office in certain contexts, so we don't want to oversimplify the issues, but let's, we're exhausting your time. Is there anything else you need to tell us in your argument, Chief? A lot, Judge, but time will not permit. The Power Oasis case, I did want to make, it is certainly pertinent, but as the court knows, in that case, prior, it wasn't before the patent office at all, and it was a major point in finding this. The question, I guess, now that we're in the Power Oasis universe is, does listing something on the information disclosure statement, but then having no real discussion of it, is that a Power Oasis situation, or does that take you out of Power Oasis? I think it is the Power Oasis situation, Judge, because I think the court, indeed, in its decision referred to that as an issue. That is, I think it referred to section 201.08 and pointed out how, if you have this reference sitting there, the examiner must review that and do his priority determination before he can allow that to issue. And our point is, as the court asks, is there direct evidence that the court, that the examiner did this? No, but the presumption is that the examiner did his job. But it's checked. I have a thought that the practitioner when he's supposed to be entitled to rely on the check from the examiner as having been looked at. As having been reviewed. Yes, exactly, Your Honor, and it's also listed on the front sheet of the patent as references that were for the patent examiner. When you come up on the rebuttal, I know you want to explore what you think Power Oasis means, but I'll reserve that because I'm going to dip in with that. Thank you, Your Honor. Thank you. Thank you, Mr. President. Mr. President. Good morning. May it please the court, my name's John McCarthy, and I represent Glenn in this matter. Your Honor, as we will submit to you, there's nothing in the 1992 application that supports the Claim 33C, which was filed in 1996. That's the first issue, that's the priority issue. But there are the two resistors in the drawing. There are, yes. You say nothing. Are you talking about the implications of the drawing? There's nothing to suggest that Mr. Cooke, who named himself as the inventor, possessed in 1992 that which he first claimed in 1996. If I may give you a quick chronology of what happened, because it's important to a number of issues. I'll call it the 869 patent application was filed in 1990, it's 1992. That had no claims to the, I'll call one slice, one clamp, one slice. That was the specification that we're concerned with in terms of predating the intervening reference. Yeah, and the only thing, yes, that's true. And there are two resistors shown in the drawing. One of the resistors is shown as, is being a resistor in the circuit. Nothing is said about it creating a non-assisted signal at all in that. Nothing is said about the other resistors. The claim language, if I may, Your Honor, is or other circuit right after the task. One of the things that I noted none of us were all remiss, gave you in our briefs, is the claim construction for that term, which I found when I was preparing for this hearing. In the appendix 2894, that claim construction, which was not public, it was agreed to before I got the case. My client came in after the claim construction, is circuit which performs the function of the capacitor. So that's the claim construction. There is nothing in the- The claim construction of what? Of the district court. Yeah, I mean, what term is that the claim construction of? Or other circuit. Or other circuit. Circuit, that is at issue in claim 33A. That is the claim construction. None of us put it in our papers, and I apologize, but I found it. This court should have it. Now, and the claim calls for a capacitor or other circuit element, other circuit, to create a level shifted signal. Then it says, that level shifted signal is then compared and goes on to other things in the claim. There was nothing in TLC's papers that suggests that the two resistors they point to create the kind of signal that then goes on and does the other things in the claim. No, but they said that an expert or an electrical engineer looking at the drawings would know that those resistors are serving that purpose. Not exactly, Your Honor. They say that the two resistors would create a level shifted signal. I would suggest any circuit element would do that under Ong's law. They do not say, and it's not in any of their papers, that the level shifted signal that claim 33A requires is then compared as required in claim, as in element 33B, in other words, you can't take a claim element just in isolation. It has to fit the rest of the claim. One of the court, the district court noted that in a footnote, one footnote in his opinion. So they say some of what you're saying, but not all of it. And that's all that's in the specification. There is nothing at all to suggest that they're talking about creating a level shifted signal for any reason at all. It's just the resistor there. One's described in the fact, one was just two in the drawing. That's it. I don't understand something about the element of slow in these papers. So help me understand. No, I'm sure you're not. I understand. I understand. We're really quarreling, if I understand correctly, over a question of fact. Is that right? That is correct. Because I believe- I think sometimes it helps for puzzling through figure three and trying to discern exactly what it was going on in figure three and what the district court did with it. Putting aside for the moment some of the inarticulated things that we discussed. I understand. It seems to me, am I correct, that the district court, I appreciate the judge, however you want to look at it, found as a matter of fact that these did not, that what figure three shows is not what claim 33 claims. Is that correct? That's correct. So in order to overturn the district court on that issue, we would have to say that the district court was clearly erroneous. It's not just a question of how we read figure three. That's exactly right. Am I getting this straight? Yes, sir. My understanding is written description is an issue of fact subject to the clear view on this matter. I don't even know what you're saying exactly. Okay, now, with my colleagues' forbearance, they, again, know so much more about these cases than I do and it's simply because, oddly enough, they were both on power of oasis. I noted that this morning. I need you to help me walk through this burger proof issue because, among other things, Mr. Dazzo raised it and seemed important to him, so I assume it's equally important to you. Let me begin by trying to get terminology straight between us so that we're not confused about this. First of all, the cases talk about priority. This really isn't a priority issue in the same sense we use priority with interference, actually. That's exactly correct. This is really more a question of whether there's a prior art that trumps a particular claim or does the claim get the benefit of an earlier filing date due to the sequence of prior patents, is that right? So, we won't talk in terms of priority because that confuses, it's not jurisdiction. It has multiple meanings and it's confusing. Secondly, let's not talk about burden of proof because that's also confusing. Burden of proof is a term that has been largely discarded in the literature in favor of two identifiable ideas, burden of production or burden of going forward and burden of persuasion, that is, when there's some question about what is the balance of the evidence. All right, and let me give you a hypothetical. The patentee, and I'm gonna use some of these real numbers but don't hang up on the case, just let me do it that way. The patentee sues on the 250 patent and says, aha, claim 33 is clearly being infringed by this terrible infringer, all right? The infringer defends by saying, wait a minute, claim 33 is invalid because here's a piece of prior art that anticipates this particular claim 33 and indeed it does, if it is prior art. At which point, the patentee says, no, it's not prior art because I'm a continuation, et cetera and I should have the benefit of the earlier original act which is basically 323 which shows up in a slightly different later configuration. Now, here's my question to you. When the patentee says, no, I have the benefit of an earlier filing date, what does the patentee have to show at that point to the court? Does the patentee simply say, I have the benefit of an earlier filing date and therefore I win unless you do something or the infringer does something or does the patentee have to show, I have an earlier filing date and here is the support, here is the support in that earlier written description that supports my claim 33 or can the patentee simply say, since that patent, that prior art was listed, I have a presumption of my favor. What is the law here? The law, I believe, under Powell races and I also want to say what happened here in response to your question because it may be pertinent to your decision in the case. I think the law is the patentee has to go forward. Has to go forward. Has to go forward with evidence of entitlement to the earlier date. What happened in this case. And what do you mean by that, with evidence of entitlement? Can he just trot out the 323 or in this case the 869 and say here it is or does he have to then show the judge, not only here it is but here's why it is. I think he has to do that. But in this case what happened was, he has to come forward. He has the burden of going forward. What happened in this case was he went forward with some evidence of entitlement beyond just trotting out the patent. But I want to. He has to show, I don't want to talk about this case. Okay, I'm sorry. Stick with my hypothetical. I think under Powell races he has a burden going forward and the burden. Of showing that there is in fact support in this case the 869 for the claim 33. That's right. I believe under Powell races that's the case. He has a burden of what? Producing evidence, of showing, making some sort of a showing, possible showing. And as soon as he does then what happens to the attacker? I think the attacker has to come forward with contrary evidence. In this case it's the other way around. The attacker comes forward. Don't tell me about this case. The attacker comes forward with contrary evidence and the judge is unconvinced of what? What result? The patent he loses. The patent he loses? Not the attacker? What? How can the patent? Who has the burden of attacking the patent? I'm suggesting in this case, where as pointed out it is clear that there's nothing to indicate that the examiner looked at the intervening evidence when he was issuing the claim. And I want to go into some of the facts about that. That under Powell races there's a presumption that or the patent he has the burden of proof. That's why. You think Powell races shifted to the patent saying the ultimate burden of persuasion? Yes. That the trial court has to be persuaded that the earlier written description supports shows the inventor had possession of the invention. And that if the trial, if the evidence is unclear or there's some imbalance, your argument is the patent is invalid. Even though ordinarily there is a presumption that the attacker has to prove by clearly convincing evidence in validity. That's my position. You're saying Powell races shifted that? Yes. If Powell races did that, wouldn't that have contravened several decades of prior law to the contrary? So it's something that we will need to look at. Now for the sake of today's argument and a few moments in the event, let's believe that if in fact we are at the stage of the evidence being totally inequitables such that being totally what? Balanced. Okay. Being totally balanced. The result will depend on where the ultimate burden lies. Of course, everyone has to face it. But let's, for the rest of today, we can. Thank you for your tolerance of my line of questioning. If you look at the facts. Yes. And the disclosure and the written description in the initial filing and whether it does or does not support a later filing of evidence. Yes. There is no inkling. Well, the only thing that's in the application is one, three, which has two resistors in whatever fashion it does. And the specification mentions one of those resistors simply as being a resistor in a circuit. True. But what about the testimony by an expert that in fact an expert looking at it and looking at those resistors would indeed have an inkling as to what they were describing? So you can't say there was no inkling. You might say that there was sufficient. Well, that very expert was also the inventor and the person who presented the claim to the patent office. That expert, that person, earlier on when he filed the claim with the patent office pointed to material that was submitted in 1995 as supporting the Orr-Other circuit. He also instructed his lawyers when they presented the matter to the district court to point to material that was submitted in 1995 to support as the corresponding structure for the claim. By the way, it's means plus function claims. You have to have a corresponding structure. And he never at any time suggested really. That's the expert who's now signing their support earlier on to the court and to the patent office pointed to later material. That's part of the issue. That's that expert. That expert does not have to be accepted to point blank. There is other evidence from Dr. McNickey that it doesn't perform in that fashion. In fact, Your Honor, you mentioned you tried to puzzle out what's happening in figure three. Dr. McNickey pointed out what's happening in that circuit. And it has nothing to do with creating a level shifted signal. It has nothing to do with creating a level shifted signal that is subsequently compared. It simply isn't there. I know we have the burden of proving a negative. But I would also submit that given what the district court did in the final effect, the district court said, she was putting the clear and convincing burden on us. He said that TLC had not provided clear case law as to where the burden was. But the burden was on us. And the district court said, no matter what burden was applied, whether it was clear and convincing or you just pre-product the evidence. But that's not a burden, that's a standard. He said it doesn't matter which standard is applied, you lose or you win either way. That's right, Your Honor. And I'm suggesting that. But that doesn't address the burden problem. That addresses which standard applies, hundreds versus clear and convincing. Your Honor, I didn't take that away from you. I did. I would suggest to you I didn't, but it's not my understanding. But I'll leave it where it is. And I would submit that ultimately with respect to this case, whatever standard or burden proof, I didn't catch the drift of meaning that you did, Your Honor, that the district court properly decided the case that there was ample evidence to support the cognitive fact that's there. And expert evidence you're talking about is basically that of the patentee now. The father who was trying to get this as easy as he can. The district court didn't accept everything that the patentee said. It's clear in a lot of different, a lot of ways. So that evidence can be disregarded as a cognitive fact, I would suggest here. It is. And in fact, the district court said, yeah, you might be able to discern that the resistors increased the level of the signal, but did not give anybody the idea that, and anybody, including the ones killed in the garage, that Mr. Cooper, the very expert we're talking about here, possessed the invention of a plumber. I'm not, I'm trying to answer your question. I'm only trying to overstate my law. I know, and you're doing a perfect job. Thank you. Any more questions? Please come up here and answer. Thank you. Mr. Mazzella, would you repeat the question? Mm-hmm. With the court's permission. Judge Paligara, I think you want to beat up on me or something? Yeah. Just run quickly through the same sequence in my hypothetical, as I did with Mr. McCarthy. I want to be sure, I think your position is exactly the opposite of his, based on exactly the same law, which is very curious. But I want to be sure I have that correct. That is to say, the patentee says, I have an infringement claim. The infringer says, no, you don't, because I have a prior mark that precedes your application date. You answer by saying, wait a minute, my application date is the original application date, because I'm a continuation. And then the question is, what do you need to show the court, the trial judge, that you are entitled to the earlier application date, earlier enough to keep this part from being prior part? Is it enough for you to simply say, here's the original patent from which I'm a continuation? Or do you need to say, here's the original patent, and if you read the written description, here's the charts, or whatever you call diagrams in it, that make my case for me? And at that point, if the court says, gosh, this is a close question, who wins? Can you respond to that? I'll try to, Judge. And I think it also depends somewhat on whether that reference was before the patent. Let's come back to that. Okay. Come back to that. That's a nice issue, and it was raised in Raulston, and it was raised in our Oasis. Yes. And I want to come back to that, go ahead. Legally, and as a practical matter, so there's different ways to look at this. I think a patentee would be nuts to say, oh, I've got an earlier application, so that makes no sense to me at all. And certainly in this case. So in other words, I do think the patentee prudently, and just, as a practical matter, he's got a burden of coming forward. With some evidence. With evidence saying, hey, this is why it works. Exactly. Okay, and then what happens? And then, if indeed it's in equipoise, or I didn't pronounce it right, then he comes along with his witnesses and says, no, no, here's why it doesn't work. Yes. And the court says, gosh, this is tough. Right. I'm not sure. I'm kind of at equipoise on this. What happens at that? Who wins, who loses? I believe the party attacking the patent loses, because he hasn't carried his burden. In my view. And is the burden ultimately approving anticipation? The burden of persuasion stays with the attacker. In my view, yes, Your Honor. And you understand his view is exactly the opposite, if I understand. Not to be, I'm not surprised. I'm not surprised. Well, we're going to have to resolve it, but I still am interested in the substance. Yes, and may I address that just very briefly with the court? I think it is interesting to look what the court requires below. First of all, the testimony on this point on support for our other circuit, a lot of testimony. Just about all of it from Mr. Cooper, of course the inventor, but the expert for DLC. On this aspect, the our other circuit aspect, which is all the court below focused on, that testimony was unrebutted. We set that forth in our brief. There's no reference to findings by the court or whatever, anything produced by Genom by the court below. What the court said is, while it may be possible that a person of ordinary skill in the art could study figure three and determine that R21 and R26 might have the effect of establishing a level shifted signal, there is nothing from which anyone, whatever that might mean, could determine with any confidence that R21 and R26 were the other circuit. Now, the court, in essence, in our view required, rather than requiring Genom to establish that there was not support for the art of the circuit, the court placed on us, DLC, the burden of establishing there was support. We feel we met that burden with unrebutted testimony of Mr. Cooper. The court cited nothing from Mr., I guess Mr. Kupnicki has gotten his PhD in the interim, but it's Mr. Kupnicki that was Genom's expert. The court cited nothing from him to support its views, and the court gave no deference whatsoever to what happened in the patent office with these data sheets that were in front of the examiner and the examiner agreed. Is there any evidence that the R21, the other resistor performed the alternative function? Is there any evidence? The evidence, Your Honor, I submit, is in the circuit diagrams. That's the most potent. And if you did this in the group. Saying that this is an alternative to the capacitor. The evidence is the capacitor appears in figure two, and then the next figure, figure three, is in the same place, the two resistors, doing the same thing, coupling the video signal into the circuit. That's really the evidence. Does Mr. McCarthy's unearthing of a claim construction of the other circuit have any impact, Your Honor? Frankly, the court below construed it, and I wanted to call the court's attention to that. At page 32 of the court's opinion below, that's appendix page 835, the court said, our other circuit means circuitry other than a capacitor to perform the function of establishing a level-shifted signal. Does that help you or hurt you? Helps. What does a resistor do? Your Honor, we cited Ohm's Law. Any engineer, any circuit, and I don't know your background, Judge, but any circuit designer knows when the signal passes through a resistor,  As a child, I grew up drawing these circuits. Great. So did I, Judge. But I was kidding. I was kidding. But that is not, to one skilled in the art, to the patent examiner, that would not be a mind-boggling task to see a resistor and know that that resistor shifts the level of the incoming signal. You have resistance, you have a signal coming in, its voltage changes as it passes through the resistor. Thank you, Your Honor. Thank you, Mr. Presidio, and Mr. Contrario for the case report. First, the claims that we're talking about in the file on December 20th, 1990. I'm sorry. I was told, Your Honor, that I didn't go up and I'm a prosecutor, that's what I was doing here. Prosecutor. And actually, nothing. But you have to limit yourself to. The cross appeal, and that didn't come up and I'm kind of going to leave it on the papers. I would say, Your Honor, on the cross appeal. Well, let me, Your Honor, yes. I was actually going to reply because I was in the flow of the hearing. I certainly understand, I certainly understand the point. Let me make one point. On the cross appeal. On the cross appeal, yes. One of the things, we have a suggestion that the claim construction, claim 33C is improper to Mr. Portman. I'll leave that to the papers, question of law. That brings up the possibility that here we have an inventor, knowing the duty of candor, who intentionally withheld a participatory piece of prior art on the very day he filed the claim. And that inactual conduct was rejected because it was cumulative. There was a patent in the stack that was equally personal. It is clear from this record, it is clear from this record that the patent office did not appreciate the fact that that was there because the reasons for allowance could not have been given if the cumulative document, cumulative patent that was in the stack had been appreciated. That's clear that there's a presumption, there's a presumption of administrative correctness that is rebutted here because the reasons for allowance. I'm sorry, how is this related to the cross appeal? Cross appeal is unequivocal conduct, Your Honor. And I'm talking about the document of cumulativeness here. I'll be brief. This is the LN 1881. It is, Your Honor. And the point of law I want to make here is cumulativeness is based upon a presumption of administrative correctness. It makes sense. If the same thing was considered by the patent office, kind of a no harm, no foul situation. In this case, there is proof that that did not happen. The presumption cannot apply. I would simply suggest that where the reason for the rule is not there. That is, there is evidence that the patent office did. So how is this related to unequivocal conduct? It has to do with the issue of cumulativeness, Your Honor, on which unequivocal conduct was rejected in the trial court. But you didn't argue with unequivocal conduct in your reply period, so Mr. Mizeau had no opportunity to respond to it. I argued with unequivocal conduct. To my pleasure. It's in our brief, and Mr. Rivera- Yes, I was going to talk to Dr. Rivera on it. But I think we have the points here. I understood, Your Honor. I limited my direct argument to responding to questions that were asked way back, but I didn't want- Yes, but I think- I didn't want to be reading. The flow of the argument was such I thought it was appropriate to do that. You're correct, Your Honor. Thank you very much. Thank you, Mr. Mizeau. Thank you. Thank you.